IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOSEPH P.,[1] | Case No. 3:22-cv-01755-HL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

HALLMAN, United States Magistrate Judge:

Plaintiff Joseph P. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.      Plaintiff's Application**

Plaintiff alleges disability based on post-concussion syndrome, visual disturbance, anxiety, and "diverticulitis with surgery." Tr. 114.[2] At the time of his alleged onset date, he was

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 15).

PAGE 2 – OPINION AND ORDER

59 years old. *Id.* He has completed four or more years of college Tr. 272, 350. He has past relevant work as a graphic designer Tr. 29.

Plaintiff protectively applied for DIB on December 23, 2019, alleging an onset date of August 1, 2018. Tr. 114. His application was denied initially on June 7, 2020, and on reconsideration on July 31, 2020. Tr. 126, 143. Plaintiff subsequently requested a hearing, which was held on March 4, 2021, before Administrative Law Judge ("ALJ") Jo Hoenninger. Tr. 68. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 70-111. A vocational expert ("VE"), Daniel McKinney, also testified. Tr. 94-111. A supplemental hearing was held on August 17, 2021, before ALJ Jo Hoenninger. At the supplemental hearing, a VE, Jaye Stutz, testified. On September 1, 2021, the ALJ issued a decision denying plaintiff's claim. Tr. 30. Plaintiff requested Appeals Council review, which was denied on September 9, 2022. Tr. 1-7. Plaintiff then sought review before this Court.[3]

## II. Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 5).

PAGE 3 – OPINION AND ORDER

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III. The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after his alleged onset date. Tr. 19.

At step two, the ALJ determined that plaintiff has the following severe impairments: "convergence insufficiency and history of refractive amblyopia of the left eye (correctable with refractive lenses); exophoria secondary to anisometropria; hypermetropia; diverticulitis; right shoulder impingement; post[-]concussion syndrome status post traumatic brain injury[.]" Tr. 20.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 23. The ALJ then resolved that plaintiff had the RFC to do light work with the following limitations:

> He can occasionally reach overhead with the right upper extremity. He can frequently reach in all other direction and frequently hand with the right upper extremity. He had good monocular vision, and should not do tasks requiring vision in both eyes or requiring good depth perception. He cannot work at unprotected heights or around dangerous moving machinery. He is able to drive, read small print, discern color, shape, and size of small objects and manipulate small objects. He is able to avoid common hazards in the workplace.

Tr. 23.

At step four, the ALJ found that plaintiff could perform his past relevant work as a graphic designer. Tr. 29. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 29-30.

## DISCUSSION

Plaintiff argues that the ALJ committed three errors: (1) violating SSR 13-1p by not fulfilling her duties to plaintiff with fairness and impartiality; (2) failing to resolve alleged conflicts with the VE testimony at step four; and (3) improperly weighing medical opinion evidence when formulating plaintiff's RFC at step four. For the reasons discussed below, the Commissioner's decision denying plaintiff's claim is affirmed.

PAGE 5 – OPINION AND ORDER

I.   **Duty of Fairness and Impartiality**

Plaintiff first asserts that the ALJ did not fulfill her duties with fairness and impartiality. Specifically, plaintiff argues the ALJ showed bias toward plaintiff by questioning the credibility of his testimony and interrupting plaintiff's counsel when he was questioning the VE. Pl.'s Opening Br. 4-5. This Court disagrees.

Pursuant to SSR 13-1p, ALJs must fulfill their duties with fairness and impartiality. SSR 13-1p explains that statements and actions by ALJs that display unfairness, prejudice, partiality, bias, misconduct, or discrimination undermine public trust and confidence in the administrative process. However, the Court "must begin with a presumption that the ALJ was unbiased. [A plaintiff] can rebut this presumption by showing a 'conflict of interest or some other specific reason for disqualification.'" *Bayliss v. Barnhart*, 427 F.3d 1211, 1215 (9th Cir. 2005) (quoting *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)) (citation omitted). To succeed in a bias claim against an ALJ, plaintiff "must show that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment." *Id.* at 1214-15.

Plaintiff argues that the ALJ was biased because the ALJ "questioned the reliability of plaintiff's testimony preemptively." Pl.'s Opening Br. 4. Specifically, plaintiff takes issue with the ALJ's statement, "I'm not entirely convinced that the vision is as bad as it is claimed and the inconsistencies which are brought out in the file that were noted by the independent medical examiner are really, you know, are- well they make me question the reliability of any testimony that we might get." Tr. 76. However, as the Commissioner correctly asserts, ALJs are required to question and evaluate testimony and other allegations based on the evidence of the record. *See* 20 C.F.R. § 404.1529. ALJs are not required to believe every allegation of disabling symptoms, and they must specifically identify the testimony that they do not credit and then explain what

evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In her decision, the ALJ explained what evidence undermined plaintiff's subjective symptom testimony, which is left unchallenged by plaintiff. Tr. 23-26. The ALJ did what was required of her, and this Court finds no error on this basis.

Plaintiff also asserts that the ALJ was "argumentative" and "threatened to disallow" counsel from asking questions of the independent medical examiner at the supplemental hearing. Pl.'s Opening Br. 4-5. This is a mischaracterization. During the Medical Expert's testimony, the ALJ warned plaintiff's counsel that further disrespectful questioning and interrupting of the medical expert would result in questioning being cut off. Tr. 51. The ALJ instructed counsel that his job "is not to repeat what's in the record…[or] argue with the expert" and that his "job is to ask questions… and if [he'd] like to make an argument, [he] can do that when we're done with the doctor's testimony." Tr. 49. Then, the following exchange occurred:

> **Q**: Hang on, Doctor, I'm not there. Okay, 21F, Page 5, go ahead.
>
> **A:** At the plan, glasses prescribed for full-time wear, separate glasses for distance and near. So, it seems to me that he's prescribing glasses for the person to function. If he's having any difficulties, come back and try additional therapy.
>
> **Q:** Doctor, could you get off speaker phone if you're on it. I just can't hear you too well. I want to make sure we can review this on the recording later.
>
> **ALJ:** Okay, Mr. Cox, we are running on time. So, I need you to wrap it up in five minutes or less. I have a 1:00 hearing I'm not going to be late to. We've gone round and round on this. You haven't convinced the doctor, the doctor hasn't convinced you. So, you can ask a couple more questions and then you can close and that'll be that.
>
> **Q:** Okay, so, for three-dimensional vision, are two eyes required?
>
> **A:** Yes, this claimant does not have depth perception.
>
> **Q:** Thank you. All right, no other questions, Your Honor.

> **ALJ:** Okay. All right, Doctor, anything else you think I need to know?
>
> **Q:** I have nothing further, Your Honor.

Tr. 60.

This record supports counsel's assertion that the ALJ was argumentative and impatient with counsel's questioning. However, an ALJ simply being "argumentative" with plaintiff's counsel does not meet the high bar needed to establish bias. *See Liteky*, 510 U.S. at 55 ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."). Plaintiff's counsel was given a fair opportunity to ask the questions they intended to ask with time to spare. Counsel did not have additional questions that the ALJ forbade him from asking. *See* Tr. 60. Even if the ALJ was argumentative and impatient, plaintiff cannot show that the ALJ's behavior "was so extreme as to display clear inability to render fair judgment." *Bayliss*, 427 F.3d at 1215.

Lastly, plaintiff asserts that at the secondary hearing, when VE Stutz testified that past work was precluded, the ALJ "immediately challenged the VE and changed her hypothetical question." Pl.'s Opening Br. 4. Again, the relevant testimony is:

> **ALJ.** …All right, so, assume a hypothetical individual of the same age and education as the claimant with the past relevant work I just listed. Further assume the individual is limited to light work, except can occasionally reach overhead with the right upper extremity, can frequently reach in all either directions and can frequently handle with the right upper extremity. Should do no tasks requiring good vision in both eyes or good depth perception. Should do no work at unprotected heights or around dangerous moving machinery. Is able to drive, read small print, discern the color, shape and size of small objects and manipulate small objects and can avoid common hazards in the workplace. Can this hypothetical individual perform the past work as a graphic designer as actually performed or as generally performed in the national economy?
>
> **A.** No, the good vision is –

PAGE 8 – OPINION AND ORDER

> **ALJ.** With both eyes.
>
> **A.** It says good vision with both eyes. That's my assumption how I heard that.
>
> **ALJ.** Okay, what that means, Mr. Stutz, is that the individual had good monocular vision, but not good vision in both eyes.
>
> **A.** Okay. What I'm hearing, I'm sorry I need to clarify a little bit.
>
> **ALJ.** Okay.
>
> **A.** So, you can do this job with good monocular vision, yes, okay. And, depth perception was the other one right, that you said?
>
> **ALJ.** Yes, should not do tasks requiring good vision in both eyes. Let me add -- I'm going to read you the hypothetical one more time because I added an element to address your question, which is a pointed question because it was a lack of clarity in the hypothetical. Can occasionally reach overhead with the right upper extremity, can frequently reach in all other directions and can frequently handle with the right upper extremity. Has good monocular vision, but should do no tasks requiring good vision in both eyes or requiring good depth perception. The individual should do no work at unprotected heights, around dangerous moving machinery, is able to drive, read small print, discern the color, shape and size of small objects and manipulate small objects and can avoid common hazards in the workplace. Can this hypothetical individual perform the work as a graphic designer?
>
> **A.** With the clarification that you just gave me, yes, I believe that individual could do the job with good monocular vision. So, yes, I believe that job would remain.

Tr. 62-63. This exchange, while terse, demonstrates that the ALJ properly adjusted the hypothetical because the VE was confused as to what the ALJ meant by "good vision in both eyes." It is not extreme behavior demonstrating an inability to render fair judgment.

In sum, when considering the ALJ's questioning in the context of the entire case, plaintiff has not met the exceptionally high standard required to show that the ALJ was biased.

**II.     Step Four Finding – Conflicts With the VEs' Testimonies**

Plaintiff next argues that the ALJ erred in concluding that plaintiff could perform his past work as a graphic designer at step four. Pl.'s Opening Brief 5-9. Specifically, plaintiff asserts

that the VE testimony from the March 2021 and August 2021 hearing, when considered together, demonstrate that plaintiff is unable to perform in his past work. *Id.* at 5. This Court disagrees.

At step four in the sequential evaluation process, an ALJ determines whether a claimant can still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, at step five, the ALJ must then consider whether the claimant can adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v). To proceed past step four, the claimant carries the burden of showing: (1) he cannot do his past relevant work as he actually performed it, and (2) he cannot do it as generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2); *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016).

The testimony from both VEs provided substantial evidence for the ALJ's step-four finding that plaintiff is able to perform their past relevant work as a graphic designer. A VE's testimony can provide substantial evidence for the conclusion that a claimant can return to past relevant work. *Tylitzki v. Shalala*, 999 F.2d 1411, 1415-16 (9th Cir. 1993). "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). However, before an ALJ may properly rely on VE testimony, the ALJ must identify and obtain a reasonable explanation for any conflicts, and then explain how the conflict is resolved in the decision. SSR 00-4p.

At the supplemental hearing, the ALJ provided VE Stutz with a hypothetical that matches plaintiff's RFC. The VE stated that a person with this RFC could perform work as a graphic designer both as generally performed in the national economy and as plaintiff actually performed it. Tr. 29, 63-64. Therefore, substantial evidence supports the ALJ's step-four finding.

Plaintiff argues that there are conflicts between VE Stutz's testimony and that of VE McKinney. Pl.'s Opening Br. 5-9. Plaintiff also takes issue with the ALJ forming an RFC that states plaintiff can perform jobs requiring "good monocular vision" and cannot perform jobs requiring "good depth perception," because plaintiff argues that the term "good" is not defined "as an official "vocationally relevant term" in any SSA policy, and [is] inarguably too vague." Pl.'s Opening Br. 7. Plaintiff further asserts that "any reasonable interpretation of the term" would assume that "good vision" at least in part refers to tasks requiring near vision." *Id.* This Court is not persuaded by plaintiff's arguments.

First, plaintiff fails to identify a conflict between the two VE's testimonies. The ALJ provided different hypotheticals to the VEs at different hearings. At the first hearing, VE McKinney testified prior to the medical expert, Dr. Boone. *See*, Tr. 44-45, 94-103. The ALJ asked VE McKinney about a hypothetical individual who could "frequently do close work, close visual work on a computer" and then about someone who could only "occasionally" perform such work. Tr. 98-100. VE McKinney testified that someone who could frequently do such close visual work on a computer could perform the graphic designer job, but someone who is limited to only occasionally performing such work could not perform that job. *Id.* As for VE Stutz at the supplementary hearing, he was asked a different hypothetical about whether someone who could not perform work requiring good vision with both eyes or good depth perception, could perform the work if they had "good" monocular vision. Tr. 62-63. Therefore, the testimonies given by the two VEs do not conflict. Plaintiff's argument that VE McKinney's testimony that plaintiff cannot perform jobs that require occasionally doing close visual work on a computer is also not a relevant conflict because the RFC does not include such limitations.

PAGE 11 – OPINION AND ORDER

This Court is also not persuaded by plaintiff's argument that the term "good" is too vague to use in hypothetical limitations. The hypothetical given in the supplementary hearing demonstrates that plaintiff is not significantly limited except for depth perception based on convergence insufficiency. Tr. 44. As discussed already, when addressing plaintiff's bias argument, the ALJ and VE Stutz had a lengthy discussion in which the ALJ clarified the hypothetical questions extensively, and the VE verified that plaintiff could perform their past work as a graphic designer despite his visual limitations. Tr. 62-63. Given that VE Stutz's testimony provided substantial evidence for the ALJ's conclusion, the ALJ did not err in finding that plaintiff could perform his past work as a graphic designer.

### III.    Step Four Finding – Weighing Medical Opinion Evidence When Formulating Plaintiff's RFC

Plaintiff next argues that the ALJ improperly relied on the testimony given by ophthalmologist Dr. Boone when formulating plaintiff's RFC.

The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. 20 C.F.R. §§ 404.1545, 404.1545; SSR 96–8p, *available at* 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Dr. Boone testified at the supplemental hearing in August 2021. He opined that plaintiff was unable to perform tasks requiring "good vision" in both eyes or tasks requiring good depth

perception. Tr. 44. Dr. Boone also opined that plaintiff is still able to drive, read small print, discern color, shape, and size, manipulate small objects, and avoid common hazards in the workplace without environmental limitations in place. Tr. 44-45.

The ALJ determined that Dr. Boone's opinion was persuasive, and the visual limitations in the RFC are almost verbatim from Dr. Boone's testimony. Tr. 23, 44-45. When analyzing Dr. Boone's opinion, the ALJ pointed to Dr. Boone's statement that "the [medical] record [does] not show visual fatigue that would prevent sustained use of a computer, while using appropriate visual correction." Tr. 28, 46. The ALJ found this statement was well supported by and consistent with Dr. Boone's explanation and citation to the record, where he explained that a doctor noted that this symptom was stable. *Id.* Dr. Boone even cited Dr. Reski's treatments notes when discussing how plaintiff "can go four to five hours with both contact lens in; however, when he takes out the left contact lens he can go for longer periods. (Tr. 46 citing Tr. 1245). The ALJ also cited to Dr. Reski's treatment notes from July 2017, where plaintiff stated that he was able to work 14 hours a day prior with prism glasses and was still "functional" afterwards, with only "some" residual fatigue. Tr. 24, 28 (citing Tr. 1329). The ALJ also explained that Dr. Boone's opinion is "consistent with the medical record, including his 20/20 to 20/25 corrected right eye distance vision and 20/20 right eye near vision conjugate eye tracking and smooth visual pursuit, normal saccadic movements and the claimant's course of treatment with NW Eyecare professions, with reported improvement with corrective lenses." Tr. 28 (citing Tr. 510, 512, 1244-45, 1256, 1258, 1270, 1288, 1329).

The ALJ also thoroughly discussed the objective medical evidence when formulating plaintiff's RFC, even evidence outside of the period of issue given that plaintiff's eye treatment history was so limited during the relevant period. Tr. 24-25. The ALJ emphasized that "timing is

PAGE 13 – OPINION AND ORDER

essential in this determination," and that the relevant period is between the alleged onset date, August 1, 2018, and the date last insured, December 31, 2019. Tr. 25. The ALJ explained that plaintiff's vision exams from 2016 and 2017 have been considered for context purposes, and the ALJ acknowledged that plaintiff reported worsening vision three to six months before the hearing, and worsening vision in March 2021, but stated this is outside the relevant period. *Id.*

The ALJ explained that the only vision exams during the relevant period were in October 2018 and January 2019. When analyzing the October 2018 vision exam, the ALJ acknowledged that plaintiff reported that he was unable "to adapt to prism reading glasses over contacts, and was using over the counter reading glasses, uncorrected at a distance, with dizziness when taking his glasses off." At this vision exam, plaintiff reported variable blurry vision based on stress and fatigue, and that he "struggled with nighttime driving" due to headlight sensitivity. Tr. 508. Plaintiff was given new glasses with a "balance lens" on the left side, which improved his vision. Tr. 512. Plaintiff did not return to see Dr. Reski until more than two years late in March 2021 which is outside the period of issue. The ALJ addressed the January 2019 visual exam, but stated it's "not clear whether this test was conducted with corrective lenses, or what level of abnormality was present, and the examination was performed by a chiropractor, as opposed to an ophthalmologist."

The ALJ adequately included limitations in plaintiff's RFC that accommodate for his decreased left eye vision with persisting convergence deficits. The ALJ and medical experts thoroughly explained why plaintiff can perform work at this RFC, and their explanations are supported by substantial evidence.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court

AFFIRMS the Commissioner's decision.

    IT IS SO ORDERED.

    DATED this 5th day of February, 2024.

                                                  ANDREW HALLMAN  
                                                  United States Magistrate Judge